<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALL WEATHER ARMOUR, LLC,** | |
| *Plaintiff,* | |
| v. | Civil Action No. 19-17150 |
| **ART OF GUTTER, INC.,** | OPINION |
| *Defendant.* | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of a joint application for claim construction pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996), presented by Plaintiff All Weather Armour, LLC ("Plaintiff") and Defendant Art of Gutter, Inc. ("Defendant"). The Court held a <u>Markman</u> hearing on May 12, 2021. This Opinion sets forth the Court's construction of the disputed claim terms.

**I. BACKGROUND**

This patent infringement case involves gutter guards, devices that prevent debris from clogging rain gutters. <u>See</u> Am. Compl. ¶¶ 25-33, ECF No. 16. Plaintiff, a Wisconsin-based manufacturer and distributor of gutter guards, is the owner of U.S. Patent No. 9,890,535, issued on February 13, 2018. <u>See</u> <u>id.</u> ¶¶ 1, 4 & Ex. B (the "'535 Patent"). Defendant, a New Jersey-based manufacturer and installer of gutters and gutter guards, sells a "Micro Mesh" gutter guard, which Plaintiff alleges infringes the '535 Patent. <u>Id.</u> ¶¶ 2, 47-55.

Generally, gutter guards "are placed on or about rain gutters located adjacent to a roof of a building to permit the passage of water while preventing debris from entering into and collecting

1

in the gutter." '535 Patent, 1:19-22. According to the '535 Patent, the patented gutter guard is unique in part because of the design of the frame that sits horizontally atop the gutter. In pertinent part, Claim 1 of the patent describes the frame as comprised of:

> at least two longitudinally-extending, laterally spaced upwardly-facing u-shaped channels . . . the channels being separated from one another by a longitudinally extending rib that extends upwardly from the floor, wherein the rib has first and second opposed side surfaces, each of which extends upwardly from the floor to a truncated peak forming a planar upper surface that connects the first and second opposed side surfaces, wherein the first and second opposed side surfaces of the rib form respective edges of adjacent upwardly facing u-shaped channels. . . .

Id. Claim 1 (10:4-16). A magnified excerpt of the '535 Patent's Figure 2 shows a cross section of this frame and the aforementioned design:



Pl. Opening Br. at 4, ECF No. 46. For comparison, a cross-section of Defendant's accused product is below:

2



Am. Compl. ¶ 31 (labels omitted).

On August 23, 2019, Plaintiff initiated this action against Defendant and its owners, Adnan and Umit Karabacak (the "Karabacaks"), alleging infringement of a different patent owned by Plaintiffs, U.S. Patent No. 9,487,955 (the "'955 Patent"). ECF No. 1. On November 4, 2019, Plaintiff filed the Amended Complaint removing the Karabacaks as defendants and adding a claim of infringement of the '535 Patent. ECF No. 16. Defendant moved to dismiss the Amended Complaint on December 2, 2019, ECF No. 19, which the Court granted as to the '955 Patent. ECF No. 30 ("June 2020 Order").[1] The Court denied the motion as to the '535 Patent, concluding that a determination of whether Defendant infringed upon the '535 Patent "involves patent claim construction around the meaning of the term 'truncated' [in Claim 1], which is an analysis 'not suitable for resolution on a motion to dismiss.'" June 2020 Order, at 4 (quoting Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1349 (Fed. Cir. 2018)).

Subsequently, the Parties submitted a Joint Claim Construction and Prehearing Statement on December 10, 2020, ECF No. 42, followed by opening Markman briefs on January 21, 2021, ECF Nos. 46-47, and responsive briefs on March 18, 2021, ECF Nos. 48-49. The Court conducted a claim construction hearing on May 12, 2021. This Opinion follows.

---

[1] The main distinction between the '955 and '535 Patents is that the '955 Patent includes an electrical heating element. See June 2020 Order at 1-2. The Court held that the Amended Complaint did not plausibly allege infringement of the '955 Patent, because Defendant's Micro Mesh gutter guard does not have a heating element.

## II. LEGAL STANDARD

"The purpose of claim construction is to determin[e] the meaning and scope of the patent claims asserted to be infringed." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (alteration in original) (internal quotation marks omitted). The meaning and scope of patent claims are questions of law to be decided by the Court. Markman, 517 U.S. at 372.

In constructing the meaning of a claim, "[t]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (citation and quotation marks omitted). To ascertain a term's meaning, the Court looks first to "intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent." Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc., 731 F.3d 1271, 1276 (Fed. Cir. 2013). In particular, a patent's specification is considered the "single best guide to the meaning of a disputed term," and "usually, it is dispositive." Phillips, 415 F.3d at 1315 (citation and quotation marks omitted). Similarly, the patent's prosecution history, consisting of the "complete record of the proceedings before the [U.S. Patent and Trademark Office ("USPTO")] and includ[ing] the prior art cited during the examination of the patent," "provides evidence of how the [USPTO] and the inventor understood the patent." Id. at 1317; see also Kaken Pharm. Co., Ltd. v. Iancu, 952 F.3d 1346, 1353 (Fed. Cir. 2020) ("Particularly useful are express representations made by or on behalf of the applicant to the examiner to induce a patent grant, which include arguments made to convince the examiner that

4

the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness.") (quotation marks and citations omitted).

While "less significant" than the intrinsic record, the Court may also rely on "extrinsic evidence," i.e., "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317 (citation and quotation marks omitted). But extrinsic evidence may not be used to "vary[]" or "contradict[]" the terms of a claim, and it should be discounted where it is "clearly at odds" with the intrinsic evidence. Key Pharms. v. Hercon Lab'ys Corp., 161 F.3d 709, 716 (Fed. Cir. 1998).

### III. ANALYSIS

The Parties generally agree that the at-issue term for construction is "truncated peak forming a planar upper surface," which is found in Claim 1 of the '535 Patent. The parties have proposed the following construction of this term:

| Disputed Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| **"truncated peak"** | "a tip of a rib configured so that the width of the rib is less than the width of the two channels on either side of the rib" | "a high point where the apex is cut short and replaced by a plane section parallel to the base" |
| **"truncated peak forming a planar upper surface"** | "the tip of the rib generally extends in a plane" | |

See Joint Claim Construction and Prehearing Statement, ECF No. 42. For the reasons explained below, the Court concludes that intrinsic and extrinsic evidence supports a construction of the term "truncated peak forming a planar upper surface" as "a horizonal plane, parallel to the base, extending the width of the distance between the opposed side surfaces of two adjacent channels."

First, the description of the frame design provided in Claim 1 itself is illuminating. Claim 1 describes how the frame's upwardly-facing u-shaped channels are separated by "a longitudinally

5

extending rib that extends upwardly from the floor, wherein the rib has first and second opposed side surfaces, each of which extends upwardly from the floor to a truncated peak forming a planar upper surface that connects the first and second opposed side surfaces." '535 Patent 10:8-14. The logical interpretation of this language is that the top of the ribs separating adjacent channels form a plane parallel to the base, the width of which is the distance between the sides of the adjacent ribs.

Second, the specification of the '535 Patent supports the Court's construction of the terms. The '535 Patent describes the at-issue frame design several times. The Abstract states that ribs—or the walls of the u-shaped channels—"may have planar upper surfaces or tips <u>lying in a common horizontal plane</u> and supporting a flat filter screen." '535 Patent Abstract (emphasis added); see also id. 2:65-67. The '535 Patent goes on to state, in pertinent part:

> Each of the ribs 70 extends longitudinally along the length of the frame 32 between adjacent channels 68. Each of the ribs 70 extends from a base 74 defining the tops of the two adjacent channels 68 to an upper surface or tip 78 which, as can be clearly seen in the drawings, <u>extends in a horizontal plane extending between the opposed sides of the associated rib</u> 70. . . . The tips 78 support the filter screen 34, and keep the filter screen 34 spaced from the floor. . . .

'535 Patent 5:59-67 (emphasis added). Again, these descriptions support the conclusion that the tops of the ribs (1) form a "horizontal plane" parallel to the base, and (2) extend the distance between the edges of adjacent upwardly-facing u-shaped channels.

Third, this construction is echoed in the '535 Patent's prosecution history. The term "planar upper surface" appeared in Claim 1 of Plaintiff's initial application for the '535 Patent, which was rejected by the USPTO as being unpatentable due to the existence of two other patented gutter guards: U.S. Patent Publ. 2007/0234647 to Higginbotham ("Higginbotham") and U.S. Patent Publ. 2016/0060870 to Martin ("Martin"). In response, and in an attempt to overcome the

6

prior art, Plaintiff made several changes to Claim 1. First, Plaintiff clarified that the '535 Patent would feature "adjacent upwardly-facing u-shaped channels." '535 Patent 9:16. This feature is distinguishable from Higginbotham, which features "channels made of a flat floor with parallel vertical ribs extending at right angles from the floor," and Martin, which features "a sinusoidal wave, where there is a downwardly-facing U-shaped channel between each pair of upwardly-facing U-shaped channels." Declaration of Mark Berkowitz ("Berkowitz Decl.") Ex. 3 at AWA_000133-34, ECF No. 47.4.[2] According to Plaintiff, the "side-by-side upwardly-facing U-shaped channels [in the '535 Patent] . . . can feature more upwardly-facing U-shaped channels per unit width than the system of Martin," which leads to increased drainage capacity. Id. at AWA_00134-35.

Second, and more pertinent, Plaintiff amended Claim 1 to clarify that the "planar upper surface" is formed by "a truncated peak." '535 Patent 10:12. As Plaintiff explained, "[n]either Higginbotham nor Martin teach such a feature." Berkowitz Decl. Ex. 3 at AWA_000136. Plaintiff provided the following explanation for why this truncated peak is beneficial:

> As a result of the claimed truncated peaks, the surface area of contact between the frame and the filter screen is increased when compared to a frame having generally sinusoidal ribs. The greater the surface area of contact, the greater amount of capillary action, which encourages movement of any water that contacts the filter screen down into the frame, through the slots, and into the gutter. . . . Additionally, by having the ribs terminated in a truncated peak, the height of the ribs is reduced in comparison to the cited prior art. This reduction in height allows water to more quickly and efficiently move through the frame and into the gutter.

---

[2] Defendant's Exhibit 3 was "produced by Plaintiff in this action" and is "an excerpt of the 'Response to the Non-Final Office Action Dated March 23, 2017' filed with the USPTO on or about June 22, 2017 with respect to [U.S. Patent Application 2015/340092 (the "'092 Application")]. Berkowitz Decl. ¶ 5, ECF No. 47.1. The '092 Application "eventually resulted in the issuance of the '535 Patent," id. ¶ 4, and is thus a part of the '535 Patent's prosecution history.

Id. at AWA_000136-37.  Additionally, in order to further illuminate the meaning of "truncated peak," Plaintiff provided an annotated and magnified excerpt of Figure 2 of the '535 Patent, clearly indicating the feature of the design considered to be the "truncated peak":



Id. at AWA_000136.  Based in part on the addition of the term "truncated peak" and satisfied by the explanation provided by Plaintiff, the USPTO ultimately approved the amended Claim 1.  Id. Ex. 4 at AWA_000114, ECF No. 47.5.[3]  This description and accompanying figure clarify that Plaintiff's and the USPTO Examiner's understanding of the term "truncated peak" at the time of the '535 Patent's prosecution is aligned with the Court's construction: that the sides of adjacent u-shaped channel form a plane parallel to the base so that the filter can sit flush atop the ribs.

Finally, this construction is supported by extrinsic evidence, namely dictionary definitions. The Merriam-Webster Dictionary defines "peak" as "a high point" or "the top of a hill or mountain ending in a point," and "truncated" as "cut short" or "having the apex replaced by a plane section and especially by one parallel to the base."  Berkowitz Decl. Ex. 6 at AOG000091, ECF No. 47.7;

---

[3] Defendant's Exhibit 4 is "a copy of the Final Office Action issued on or about July 18, 2017 by an examiner at the USPTO with respect to the '092 Application." Berkowitz Decl. ¶ 6.

id. Ex. 8 at AOG000103, ECF No. 47.9.  Although dictionary definitions may not be used to "contradict[]" the intrinsic evidence, Key Pharms., 161 F.3d at 716, these definitions confirm the Court's construction of the claim.  Helpfully, these definitions clarify that the term "truncated peak" refers to the flat surface, parallel to the base of the frame, that is formed between the tips of sides of adjacent channels.

      The Court declines to adopt either Defendant's or Plaintiff's proposed constructions of the term.  Although the Court generally agrees with the Defendant's proposed construction, the Court concludes that Defendant's use of the terms "high point" and "apex," neither of which appear in Claim 1 of the '535 Patent or the Patent's specification, relies too much on extrinsic, dictionary definitions.  See Philips, 415 F.3d at 1321 ("[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification.").

      The Court also declines to adopt Plaintiff's proposed construction for several reasons.  As an initial matter, the Court disagrees with Plaintiff that the Court must construct the term "truncated peak" independently from the clause "truncated peak forming a planar upper surface."  The term "truncated peak" appears for the only time in Claim 1 of the '535 Patent and in conjunction with the phrase "forming a planar upper surface."  Moreover, as discussed above, the term "truncated peak" was added as an amendment to clarify the subsequent term "forming a planar upper surface." It is therefore evident that best way to interpret "truncated peak" is in conjunction with the modifier "forming a planar upper surface."

      Additionally, Plaintiff urges the Court to construct "truncated peak" as "a tip of a rib configured so that the width of the rib is less than the width of the two channels on either side of the rib."  Joint Claim Construction and Prehearing Statement, ECF No. 42.  Plaintiff argues that

this is the proper construction because the key design feature of the '535 Patent is that it provides for more channels than prior art. Although the '535 Patent does create more channels than Higginbotham and Martin, this feature is the result of the Patent's "adjacent upwardly-facing u-shaped channels," not the Patent's "truncated peaks." '535 Patent Claim 1; see also Berkowitz Decl. Ex. 3 at AWA_00134-35 (explaining that the adjacent upwardly-facing u-shaped channels mean that the '535 Patent "can feature more . . . channels per unit width than the system of Martin"). Instead, as is made clear by the prosecution history, the addition of the "truncated peak" descriptor was meant to increase surface area of contact with the filter and decrease the height of the ribs. Berkowitz Decl. Ex. 3 at AWA_000136-37. For this reason, the "truncated peak" language does not require the width of ribs to be narrowing than the channels, as Plaintiff argues.

The Court therefore adopts the following construction:

| Disputed Terms | Adopted Construction |
|---|---|
| **"truncated peak forming a planar upper surface"**<br>'535 Patent Claim 1 | "a horizontal plane, parallel to the base, extending the width of the distance between the opposed side surfaces of two adjacent channels" |

## IV. CONCLUSION

For the reasons stated above, the Court adopts the above construction of "truncated peak forming a planar upper surface" as set forth above. An appropriate Order will follow.

**Dated**: July 26, 2021

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
UNITED STATES DISTRICT JUDGE
